Your Honor, I would like to start with what brought us to this Court today, which is this statute, the stop-time rule. The stop-time rule basically says that a continuous physical presence in the United States shall be terminated when the alien is served a notice to appear or when the alien has committed an offense, whichever is earliest. In this case, we have an offense that was committed in 1987. We have, we believe, a stop-time at that time on November 18, 1987, when he committed the offense. We believe a fair reading of the statute is that you don't get two stop times. Otherwise, Congress would have said the word and instead of the word or. And we believe they would not have used the words whichever is earliest. I think it can be fairly said, statutory construction, that we can say the word one is earliest, not whichever two. So we have one stop time, is what we would argue. There are no cases in the Ninth Circuit. RAM does not address two stop times. RAM only addresses the, quote, meritless appeal of an alien. JUROR 1 Jurisdictionally, should we probably get there? JUROR 2 Jurisdictionally, Your Honor, I think Landon v. Placentia brings us here. Landon v. Placentia is a due process fairness requirement that all aliens shall be treated fairly in proceedings. Here we had an unfair treatment by the immigration judge, Darlene Seligman, when she pre-termitted the ten-year suspension of deportation on July 20, 2000. She should have permitted at least a continuance because he is surprised. Mr. Dworky has handed this amendment at the time of his hearing, on the day of the final hearing, saying, I'm sorry, we forgot to put the commission of the offense in the order to show cause. But we're going to add it today. We're going to give you the order to show cause, and it's going to have in it today, on July 20, a copy of the additional allegation. We're going to, in other words, amend the defective, incomplete order to show cause that we served you with three years before. Now, we're not going to give you any time, Darlene Seligman tells the alien, because it's pre-termitted. What would you need time for? You have no relief available to you. It's obvious from the reading of the statute that time stops on the service of the order to show cause. And the service of the order to show cause occurred on March 5, 1997, nine and a half years after the original commission of the offense. So therefore, nine and a half years there, the order to show cause was served on you March 5, 1997. You're pre-termitted, Mr. Dworky. You have no rights. Would you like to apply for voluntary departure? Yes, I would. You'll be granted voluntary departure from a country that you've been in for 20 years. We're not going to give you an opportunity to prove extreme hardship to your permanent resident wife. We're not going to allow you to prove extreme hardship to your U.S. citizen child or your permanent resident child. And, sir, you're going to have to leave your job as a clerk of the District Court of Appeals for the State of California and go to your country. That is what Darlene Seligman told our client on July 20th. I'm still waiting to hear what the process of violation is. Remember, we're talking about jurisdiction. You agree we don't have jurisdiction unless you can come up with a constitutional ground. Right, of course. Okay, so I'm, you know, you may sound bad and it may have been harsh and may have been unpleasant, but I'm at a loss a little bit to understand what you're saying. You just say it in plain English. Garcia Lopez versus Ashcroft. Just plain English. What happened? What was the process that he was due? And what is the process that he was denied? What should have happened and what didn't happen? I understand. He was due on July 20 of 2000. He was due the right to a continuance so that he could respond to this new allegation. That's what was due to him. The new allegation about the... Commission of the offense, which was added on that day. And let's say he'd been given a continuance. It's very possible. What would have happened then? Judge Seligman would have read the statute and she would have seen that it says the word or. She would have seen that it's one stock time. She would have seen that he now has 13 years in the United States since the commission of his offense. She would have said, you have a right, sir, to provide us with evidence of your 10 years of continuous physical presence since the commission of the offense. Because it's clear from the statute, it says or. It's clear from the statute, it says whichever is earliest. Therefore, sir, like Mrs. Placencia, you have a right to a continuance. We always give continuances, Mr. Duarte. She should have said to him, whenever you are surprised with an amendment, whenever you are issued a brand new allegation on the day of the hearing. I have been practicing immigration law for 34 years. I have appeared in probably 20,000 immigration cases in that period of time. I have never been in a courtroom where the judge did not turn to me when they're surprising us with an amendment, with a new charge. You have time in which to respond to this charge. And I do not know why Judge Seligman did not do that. Interestingly enough, she was my law student. I haven't, I haven't still figured out what it is you process. And if you want some more time, since, you know, we could have gathered more evidence or, you know, put on more witnesses or something. The reason you give additional time is to, to get a meaningful hearing. What would. Meaningful hearing. I think you're right, Your Honor. That's exactly what he wanted. What would he have brought in? Would he have brought in evidence he didn't commit the crime? He would have brought in evidence that he has 13 years in the United States since the commission of the offense. And how would you have done that? By his records of employment, his records of taxes, his records of births of his two children. Let's get this agreement again about what the statute means, whether or not when they file the, the, the complaint against him, the deportation complaint, whether that stopped the time. It gets back to the same issue. Well, of course we argued it does not stop the time. But it's not like that's an argument you could have made, made better later. It's not like you could bring more evidence in or you could say, Oh, I will bring a witness or anything else. It is, it's an argument you could have made just as well on the date of the hearing as if you've got the continence. Your Honor, we are now, what, four years later and this argument has still not been. It's either a good argument on the date of the hearing or it's not, it's not made better by passage of time. It's not like you say, gee, uh, you know, I wasn't the guy. I, I, you know, this, this, this, uh, thing that our charges have raised, you know, I, I wasn't there. I didn't have a lawyer, you know, or something. And here, here's why you need to give me time to litigate whether or not this is really my, my, my felony. It's not that kind of due process. It's an argument he could have made on the day that she said she raised the issue. And he could still make later, he could still make later on. Passage of time would have, given more time wouldn't have changed the argument. But it's not fair, Your Honor, to surprise him on that day. It is not fair to say, now you have no relief. It is not fair to say, you leave the United States. You have nothing to present to us today. You have no arguments to make. Be quiet. In other words, that is not fair. He, he could have said what you're telling us. He could have, uh, uh, if he had been prepared. Remember, when he's coming, when he's coming to court on 2000, July 22,000, he has a suspension of deportation already presented. It's a seven year suspension based on the fact that he had good moral. Did he have a lawyer at the time? I'm sorry? Yes, he did. A fine lawyer, actually, Katherine Perry. And she came and presented, started to present this evidence on the seven year suspension of deportation. And Darlene Sullivan says, no, no. The order to show cause stops your time. Sorry. I'm withdrawing. I'm pretermitting your suspension of deportation. Let me ask you two questions. Yes. First, uh, in my notes, I don't have, uh, I didn't jot down that there was an objection to the, to a denial of a continuance or that that's even in the brief. Did I, did I overlook that? Uh, Your Honor, no, I, I did not see, and I did, I also did not see in the transcript, uh, any, uh, request for a continuance at that point. Or you're not right about it now? Well. Other than two minutes ago. Right. I mean, we, you're right. Secondly, did this, uh, this fellow made a pardon application? He did, Your Honor. What's the status of that? Uh, it is, it, we, we received three months ago, uh, a statement saying that they're sorry that they're taking so long in the governor's office to make a decision on this. Uh, but there are a number of cases ahead of him and that we expect to have some response. So it's pending, in other words? It is pending, yes. Okay. So all he really has, Your Honor, is an expungement at this point, uh, which of course, in, under my circuit law, does not wipe, uh, a traffic, you know, a controlled substance traffic conviction away for purposes of deportability. Okay. Um, I see my time is up. I'd like to reserve a little bit for rebuttal. If I could? May it please the Court and to my friend of the United States. This case can only result in one conclusion, that the Court does not have jurisdiction over Mr. Duarte's non-jurisdictional claims. The Court in Magana-Posano and Alfaro-Reyes stated that where the individual has been subject to deportation because of certain criminal grounds, um, including a controlled substance violation or aggravated felony conviction, the Court cannot entertain any statutory or constitutional claims. As a result, the Court needn't go no further. In this case, Mr. Duarte does not dispute that he has a conviction that subjects him to deportation as a controlled substance offender. He was convicted in 1988 of unlawful possession for purposes of sale of heroin. Um, therefore, there is no question that IRA-IRA 309C4G bars this Court from entertaining any claims of his eligibility for relief. What happens if his pardon is granted? If he has a gubernatorial pardon, then that would relieve him from deportability as a controlled substance offender and aggravated felon, perhaps. But that is something that's not before the record. If it does happen, what he would have to do is file a motion to reopen with the Board so that he can reopen these proceedings. What would be the harm in deferring submission of the case or hanging on to it in some fashion until we find out what goes on with the pardon? Your Honor, because it's protracting a matter in which he really does not, the only way he has any form of relief really is to appear before the District Court on habeas to raise his claims for relief. And as far as this Court's concern... That's why I asked you what happens if he's pardoned. If he's pardoned, then all bets are off. He's not deportable anymore. Right. But that depends upon what kind of pardon. And if it goes on, we never know. For now, then, as Petitioner has stated, there is a line of other people who have made applications for pardons. We can't hold a case indefinitely for an uncertain period of time simply because there's the possibility of it. And even if we were to do so, what happens is that if he is able to obtain this pardon, he can then still try to seek reopening and go through the administrative process to obtain relief. In the meantime, I guess he would be deported and... That would be a strong likelihood, Your Honor. The other matter is, in terms of protracting this case further, the Court technically doesn't have jurisdiction. And the longer the Court decides to delay a decision on a case that it doesn't have jurisdiction over, the longer he is actually allowed to then violate the laws of this country. And that's not something, that's not a precedent that we should create here. So in terms of his claims as far as the... Let's say we look at the record and we see that the I.J. has simply miscalculated the time. I know this is not this case, but it turns out it's ten years earlier. The I.J. says it's nine and a half years, but it turns out to be 19 and a half years. Still no jurisdiction? Yes, Your Honor. What if it turns out that we look at it and it's, you know, instead of being a real conviction, it's a Picasso painting? Somebody made a copy of a Picasso print and put it in and said, this is a record of conviction. And the I.J. looked at it and said, yeah, this looks to me like a record of conviction. And therefore, that's in the record. Still no jurisdiction? Your Honor, if the question is whether or not there was sufficient evidence to establish his deportability, that there was an actual conviction, then the court would have jurisdiction because the court does have jurisdiction to determine if he was subject to deportation as an aggravated felon or as a controlled substance offender or any kind of criminal ground that would subject him to deportation. So that goes into someone's question. If, for example, tonight the governor issues him a pardon, that would go to the question of whether or not there was an adequate basis for the order, right? Yes, Your Honor. Suddenly, we would have jurisdiction to look at it. And when we looked at it, we'd notice that, oh, this thing that looked like conviction is now turned from lead into gold or vice versa, right? Your Honor, to be quite frank, this is a matter that the government would request additional briefing on because if I recall correctly, the waiver as far as a pardon is concerned applies only to aggravated felony convictions and not necessarily to controlled substance violations. But I can't tell you off the top of my head whether that is true. I do recall, however, that there is a waiver provision dealing with gubernatorial pardons within the aggravated felony ground. I don't recall if that pardon ground or pardon waiver applies to controlled substance violations. If that's the case and there is no waiver provided for controlled ---- Are you changing the answer you gave just so? Your Honor, I'm correcting it, yes. To the extent that it might alleviate one ground of deportation but not the other. And that's the issue here is because there's two separate grounds of deportation which would eviscerate this Court's authority to consider his other claims. And if there's one, then it won't really matter if there's the other, meaning that if he is convicted of a controlled substance violation and there is no waiver for that ground of deportability, the Court still can't exercise jurisdiction even if he may not be subject to deportation as an aggravated felony. I don't know these rules, but it seems ---- Do I understand you to say that if he were convicted of first-degree murder and he's pardoned, the pardon would be effective? But if he's convicted of selling marijuana and he's pardoned, the pardon is not effective? Your Honor, again, that relates to an issue as to the effect of a pardon on a conviction and whether that conviction ground is aggravated felony or a controlled substance or some other ground of criminal deportation. And that would require supplemental briefing as to the effect of a pardon. But here, again, the Court doesn't need to address that issue because there is no pardon. That is something that is a ---- We don't even know if it's a possibility because pardons are not freely granted and they don't occur that often. And so to hold this case for something that's a possibility and to also require additional briefing on the potential effects of a pardon would be a necessary exercise of judicial resources. It makes this case a little different than the usual ones we see is that the judge has already acted on it and recommended the pardon to the governor, which, at least in my experience, takes this case out of the usual where somebody hopes, you know, keeps his fingers crossed and hopes the governor will give him a pardon. It's in the works, in other words. Your Honor, well, then if it is an issue that is of concern to the Court, then, again, the government would ask that there be supplemental briefing as to what the potential effect of a pardon is on both grounds of deportability. And in your view, we don't need to stop some arguments. No, Your Honor. If there is no jurisdiction, the Court, and there is no dispute that he ---- Right. At this point, there is no dispute that the Court or that Mr. Duarte Arrizate is subject to deportation for a criminal ground that bars this Court's jurisdiction. Therefore, there is no way that this Court can address his claims as to the stop time rule. And the only way he can do so is before a district court on habeas. If there's no other questions, Your Honor, then the government would submit on its brief and remind the Court that all the Court needs to find is that there is no jurisdiction under IRIRA 309C4G and its case precedent. Thank you. Thank you. I think you're negative, Tom. We'll give you a minute. I don't need a minute, Your Honor. Just a few seconds, if I could. I'd like to just finally state that in terms of jurisdictional issues, it seems to me that this Court, the Ninth Circuit and the Supreme Court in St. Cyr and now Magano and some other cases, Goncalves in the Second Circuit, they've all resisted the court-stripping issues involved in Illegal Immigration Reform and Immigrant Responsibility Act. And I have briefed Garcia-Lopez v. Ashcroft, Calcano-Martinez v. INS, Huerta-Guevara v. INS, all in the Ninth Circuit, all in 2003 on pages 3 and 4. And I think that this Court, if they found no jurisdiction here, would probably have to explain those three cases. And I think they would have to say that we, you know, we as a panel disagree with the panels in those cases. I don't think they can just say there's no jurisdiction because I think that in the transitional case such as this is, this is not a typical IRIRA. This is a transitional case. I think that you'll find that these cases say that we, that this Court does have jurisdiction to make a determination here. Which cases are you relying on? Your Honor, it's in my reply brief on pages 3 and 4. It's in the reply brief? Yes, it is. Those four cases are all Ninth Circuit cases, all in 2003, all discussing transitional rules cases, all talking about jurisdictional, and all deciding in favor of the, of the. Garcia-Lopez, Calcano-Martinez. And Huerta-Guevara are the three cases, Your Honor. And then, of course, there's one in the Tenth Circuit in 2002 I also cited, Renteria. Okay. Thank you. Thank you. Cases are just a minute. We'll hear argument next in United States v. Jimenez Borja, Borja.
judges: Kozinski, O'scannlain, Silverman